752 F.2d 923
 53 USLW 2385, 1 Fed.R.Serv.3d 942,
6 Employee Benefits Ca 1170
 William R. BARROWCLOUGH, Judith A. Barrowclough, Bryson J.
Barrowclough and Gerie W. Barrowclough, Appellants,
v.
KIDDER, PEABODY & CO., INC., Kidder, Peabody & Co.,
Incorporated Deferred Compensation Plan, Larry Brand, Mark
F. Dalton, John Moran, Robert A. Krantz, Jr., Peter R.
Catalano, Jr., Andrew J. Nopper, Bruce Adam, John Does A
through Z, being certain unknown unnamed individuals
consisting of the members of the Deferred Compensation
Committee of the Kidder, Peabody & Co., Incorporated
Deferred Compensation Plan, the Board of Directors and
Management Committee of Kidder, Peabody & Co., Incorporated.
 No. 83-5777.
 United States Court of Appeals,
Third Circuit.
 Argued July 19, 1984.
Decided Jan. 18, 1985.
 
 Charles A. Strenk (Argued), Clemente, Neiheisel, Strenk & Kiernan, Morristown, N.J., for appellants.
 Brian F. McDonough (Argued), Matthew Farley, Shanley & Fisher, P.C., Newark, N.J., for appellees.
 Before SLOVITER, and BECKER, Circuit Judges, and FULLAM, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 The issues before us on this appeal concern (1) the scope and extent of Congress' exemption from ERISA of unfunded deferred compensation plans that exist primarily for the benefit of select managerial and highly compensated employees and (2) the interrelationship of ERISA with the arbitration requirements of the New York and American Stock Exchanges. Some of the issues raised are before an appellate court for the first time, and hence require a detailed legal exposition.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 2
 William Barrowclough was hired in August, 1980 by the Morristown, New Jersey office of Kidder, Peabody & Co., Inc. (Kidder, Peabody) as a vice-president, account representative and investment advisor. Beginning in November, 1980, Barrowclough participated in a plan established by Kidder, Peabody by which its executives earning more than $75,000 per year could reduce their tax liability by deferring up to 25 percent of their income. These sums are maintained by Kidder, Peabody in an account credited to the participating employee which accumulates with interest and which is payable to the participant or beneficiary upon the earliest of the employee's retirement, death, disability, or termination.
 
 
 3
 By the terms of the plan, Kidder, Peabody's obligation to pay a participant "the amount credited to his or her Account" was to be neither funded nor secured. The title to and beneficial interest in the accounts remained with Kidder, Peabody.[1] The Plan also provides that payments under the Plan shall not be subject to attachment for the debts of the participating employee.[2]
 
 
 4
 Barrowclough was discharged from employment on November 30, 1982. Kidder, Peabody claims that he mishandled customer accounts, and the company was obliged to recredit the losses to two customers' accounts. On November 1, 1982, before his termination, Barrowclough signed an agreement to pay Kidder, Peabody the approximately $165,000 that was being credited to those customers.
 
 
 5
 On December 3, and again on December 15, 1982, Barrowclough wrote to the company asking when the sums in his deferred compensation account would be paid to him and requesting an accounting of his accumulated deferred compensation. The response written by Robert Krantz, Vice-President, Secretary and General Counsel of the office of Kidder, Peabody in New York, did not give the requested accounting, but stated that the company had settled several complaints brought by Barrowclough's former customers and had paid or credited them sums "already in excess of the amounts that might have become payable to you." App. at 99a. The letter continued,
 
 
 6
 We are of the opinion that you share or have primary liability to these customers and we shall accordingly set off the amounts that we have paid and/or credited to customers against such amounts as would otherwise be payable by us to you. In view of the amounts involved, this means that we do not anticipate that we shall be making any further payments to you.
 
 
 7
 Id.
 
 
 8
 Barrowclough wrote to Krantz again on February 1, 1983 and April 8, 1983, demanding an accounting and payment. On June 16, Barrowclough filed suit in the United States District Court for the District of New Jersey against Kidder, Peabody, its Board of Directors and Management Committee, the Kidder, Peabody & Co., Incorporated Deferred Compensation Plan (Plan), and Larry Brand, Mark F. Dalton, John Moran, Robert A. Krantz, Jr., Peter R. Catalano, Jr., Andrew J. Nopper, Bruce Adam, and "John Does", as members of the Deferred Compensation Committee charged with administration of the Plan. Judith, Bryson and Gerie Barrowclough were also named as plaintiffs as the beneficiaries of Barrowclough's account (hereafter jointly referred to as Barrowclough).
 
 
 9
 The complaint contained 19 counts. Count 1 sought to enforce the terms of the Plan and asked for damages and attorney's fees under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001 et seq. (1982). Count 2 sought liquidated damages for failure to provide an accounting required under sections 105(a) and 502(c) of ERISA, 29 U.S.C. Secs. 1025(a), 1132(c). Count 3 alleged a breach of fiduciary duty under ERISA and common law. Count 4 claimed that Kidder, Peabody's purported set-off of Barrowclough's potential or actual liabilities against the amount in his account diverted benefits to the use of non-participants and thereby violated Sec. 403(c)(1) of ERISA, 29 U.S.C. Sec. 1103(c)(1). The remaining counts presented various theories at state law, including breach of contract, conversion, and statutory violations. Jurisdiction over the federal claims was based on Sec. 502 of ERISA, 29 U.S.C. Sec. 1132. Pendent jurisdiction was asserted over the state law claims.
 
 
 10
 By letter of July 29, 1983, Krantz sent Barrowclough an "Annual Deferred Compensation Statement" showing the account balance to have been $89,072.70 as of December 31, 1982.
 
 
 11
 On August 9, 1983, Kidder, Peabody filed a demand in a New York state court for arbitration of the claims raised in Barrowclough's complaint. It relied on agreements that Barrowclough had signed with both the New York and American Stock Exchanges to arbitrate all disputes "arising out of my employment."[3] The Exchanges require such agreements to be signed by brokers for all member firms.
 
 
 12
 On August 11, 1983, Kidder, Peabody filed a motion in the district court to compel arbitration under 9 U.S.C. Sec. 4; to stay the district court proceedings under 9 U.S.C. Sec. 3; to dismiss or grant summary judgment on Barrowclough's claims under ERISA; and to strike the claims under Counts 1, 2 and 4 for punitive damages. Plaintiffs responded with a cross-motion to enjoin the arbitration in New York and to grant partial summary judgment for plaintiffs on Counts 1, 2 and 4. Plaintiffs contested the arbitration on the grounds that the arbitration agreements Barrowclough had signed did not cover the dispute at hand or all the parties thereto, and that as a matter of federal law and public policy the court should not compel the arbitration of their claims under ERISA.
 
 
 13
 The district court issued two oral opinions on the pending motions. In its opinion of September 26, 1983, the court found that the arbitration agreement was valid and binding and covered the dispute between the parties, that the joinder of the Barrowclough beneficiaries as plaintiffs did not preclude arbitration even though they were not parties to the arbitration agreement, and also that the joinder of defendants other than Kidder, Peabody did not preclude arbitration. The court stated that it would grant defendants' motion to compel arbitration and deny plaintiffs' motion to stay arbitration, subject to modification by any subsequent decision "on the ERISA claims."
 
 
 14
 On October 19, 1983, the court issued an opinion on the ERISA issues. It held that Count 4 of the complaint did not state a claim under ERISA because the Kidder, Peabody Deferred Compensation Plan was exempt from the ERISA provision that precludes diversion of funds to the employer. Similarly, the court held that the ERISA provision requiring an accounting upon request, which formed the basis of Count 2 of the complaint, was inapplicable because an administrative regulation had exempted the Plan from the required accounting. Finally, the court held that Count 1 also failed to state a claim because it invoked the administrative and enforcement provisions of ERISA which the court concluded did not grant any substantive rights. The court stated that it would grant summary judgment for defendants on Counts 1, 2 and 4.[4]
 
 
 15
 Before the entry of any order encompassing the holdings of these opinions, the court, on October 21, sua sponte, issued an order to "administratively terminate the action ... without prejudice to the right of the parties to reopen the proceedings ...." App. at 130a. On October 25, plaintiffs filed a notice of appeal, purportedly from final judgment as incorporated in the opinions of September 26 and October 19.
 
 
 16
 On November 3, the district court "supplemented" the order of October 21 by issuing an order granting summary judgment for defendants on Counts 1, 2 and 4; denying summary judgment for plaintiffs on those same Counts; granting summary judgment in favor of defendants Adams, Catalano and Nopper, and against plaintiff Judith Barrowclough on the entire complaint; granting leave to amend the complaint to add plaintiff Dondi Barrowclough; staying further proceedings pending arbitration; and compelling arbitration on "all of plaintiffs' remaining claims" before the New York Stock Exchange.[5]
 
 
 17
 Following the appeal, the arbitrators issued an award, holding for Barrowclough on his claim for the amount in his deferred compensation account, $89,072.70 plus interest from December 31, 1982, and holding for Kidder, Peabody on its counterclaim in the amount of $100,000.[6]
 
 II.
 APPEALABILITY
 
 18
 We consider first a question of our appellate jurisdiction, an issue raised by this court. It is apparent that plaintiffs' notice of appeal, filed before entry of the order of November 3, was premature. That order, however, was final under 28 U.S.C. Sec. 1291. In Goodwin v. Elkins & Co., 730 F.2d 99, 101-02 n. 2 (3d Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984), we held that an order dismissing all of plaintiff's federal securities claims and staying proceedings on the remaining state law claims, which could be construed to have in fact compelled arbitration on those remaining state law claims, was final. The present appeal is from an order on all fours with that in the Goodwin case.
 
 
 19
 The premature notice of appeal does not oust us of jurisdiction. We have repeatedly held that a premature notice of appeal may be considered as if taken from a subsequently entered final order, absent prejudice to appellees. See Presinzano v. Hoffman-LaRoche, Inc., 726 F.2d 105, 108 (3d Cir.1984); Cape May Greene, Inc. v. Warren, 698 F.2d 179, 184-85 (3d Cir.1983); Richerson v. Jones, 551 F.2d 918, 922 (3d Cir.1977). No motion listed in Fed.R.App.P. 4(a)(4) was timely filed that would render plaintiffs' notice of appeal a nullity. See Cape May Greene, 698 F.2d at 185; compare Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 60-61, 103 S.Ct. 400, 403-404, 74 L.Ed.2d 225 (1982). There being no prejudice to appellees, we will hear the appeal.
 
 III.
 CLAIMS UNDER ERISA
 
 20
 Before we turn to Barrowclough's contention that the district court erred in concluding that the complaint failed to state a cause of action because the Plan was exempt from the relevant ERISA provisions, we will sketch the general structure of the statute.
 
 A.
 Structure of ERISA Coverage
 
 21
 ERISA is landmark legislation that subjects a wide variety of employee benefit plans to complex and far-reaching rules designed to protect the integrity of those plans and the expectations of their participants and beneficiaries. The Act contains three subchapters, of which only the first, entitled "Protection of Employee Benefit Rights," 29 U.S.C. Secs. 1001-1145, is at issue in this case. This subchapter is in turn divided into Subtitle A, 29 U.S.C. Secs. 1001-1003, which contains findings, definitions and the coverage provisions governing the entire Act, and Subtitle B, 29 U.S.C. Sec. 1021-1145, which contains substantive regulatory provisions as well as specific limitations of coverage. Subtitle B is further divided into five parts. Part 1 governs reporting and disclosure, 29 U.S.C. Secs. 1021-1031; Part 2 governs participation and vesting, 29 U.S.C. Secs. 1051-1061; Part 3 governs funding, 29 U.S.C. Secs. 1081-1086; Part 4 governs fiduciary responsibility, 29 U.S.C. Secs. 1101-1114; and Part 5 governs administration and enforcement, 29 U.S.C. Secs. 1131-1145.
 
 
 22
 Kidder, Peabody does not argue that its deferred compensation plan is not included within the broad range of employee benefit plans covered by Subchapter I of ERISA in 29 U.S.C. Secs. 1002(2) and 1003(a). Under 29 U.S.C. Sec. 1002(2)(B), covered "employee pension benefit plans" include any employee benefit plan that:
 
 
 23
 (B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.
 
 
 24
 However, the statute exempts deferred compensation plans from certain substantive requirements. 29 U.S.C. Sec. 1051, which defines the scope of Part 2, covering participation and vesting, states,
 
 
 25
 this part shall apply to any employee benefit plan described in section 1003(a) of this title (and not exempted under section 1003(b) of this title) other than --... (2) a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.
 
 
 26
 (emphasis added). Identical language appears in 29 U.S.C. Secs. 1081 and 1101, the specific coverage provisions for Parts 3 and 4 of ERISA, relating to funding and fiduciary responsibility.[7] It is evident from the legislative history that Congress did not choose to grant such plans a blanket exemption from ERISA, as it could have done, but instead keyed the exemption to specific substantive provisions of the legislation as it progressed through both houses and the Conference Committee. See S. 4, 93d Cong., 1st Sess. Sec. 104(b)(6) (1973), reprinted in 1 Legislative History of the Employee Retirement Income Security Act, 1974, 505 (1976) [hereinafter cited as Legislative History of ERISA]; H.R. 2, 93d Cong., 2d Sess. Secs. 101(b)(5), 201(b)(5), 301(b)(5) (1974), reprinted in 3 Legislative History of ERISA 3918, 3971, 3996; Summary of Differences between the Senate Version and the House Version of H.R. 2 to Provide for Pension Reform, Report for the House and Senate Conferees on H.R. 2, Part 1 at 1-3, 29-31, Part 2 at 7, 24-25, Part 3 at 1-3 (Comm.Prints 1974), reprinted in 3 Legislative History of ERISA 5154-56, 5182-84, 5213, 5230-31, 5251-53; H.Conf.Rep.No. 1280, 93d Cong., 2d Sess. 255-56, 260-61, 267, 291-92, 296, 367, reprinted in 1974 U.S.Code Cong. & Ad.News at 5038-39, 5043-44, 5049, 5071-73, 5076-77, 5146-47.
 
 
 27
 Neither Part 1, relating to reporting and disclosure, nor Part 5, relating to administration and enforcement, contains a similar specific exclusion from coverage. However, 29 U.S.C. Sec. 1030 provides that the Secretary of Labor may "prescribe an alternative method for satisfying any requirement of this part [Part 1] with respect to any pension plan."Thus, an unfunded plan that defers income of the specified select group until their employment is terminated is covered by ERISA generally, but is exempted from the substantive provisions of Parts 2, 3 and 4 and may be exempted by administrative regulation from the provisions of Part 1. See J. Mamorsky,Employee Benefits Law, Sec. 10.02[d] (1982); Goodman & Stone, Exempt Compensation Arrangements Under ERISA, 28 Cath.U.L.Rev. 445, 459-61 (1979).
 
 B.
 Applicability to the Plan
 
 28
 We turn now to consideration of the applicability to the Kidder, Peabody Plan of the various ERISA provisions on which appellants rely.
 
 1. Failure to Provide an Accounting
 
 29
 In Count 2, Barrowclough claims that Kidder, Peabody failed to provide him with an accounting of his accrued benefits on his written request, and that such an accounting was required by 29 U.S.C. Sec. 1025(a), a provision in Part 1, Subchapter I, which states,
 
 
 30
 Each Administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information--
 
 
 31
 (1) the total benefits accrued, and
 
 
 32
 (2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.
 
 
 33
 The statute provides that if the accounting is not provided within 30 days after such a request, the Administrator may be liable for damages up to $100 per day from the date of such failure.[8]
 
 
 34
 The district court construed an administrative regulation promulgated by the Secretary of Labor as exempting the Plan from the reporting and disclosure requirements of 29 U.S.C. Sec. 1025. The statute provides that if the Secretary makes certain determinations,[9] s/he "may prescribe an alternative method for satisfying any requirement of this part [Part 1, which contains Sec. 1025] with respect to any pension plan, or class of pension plans subject to such requirement ..." 29 U.S.C. Sec. 1030. In 1975, the Secretary promulgated a regulation that "contains an alternative method of complying with the reporting and disclosure requirements of Part 1 of Title I of [ERISA] for unfunded or insured pension plans maintained by an employer for a select group of management or highly compensated employees ..." 29 C.F.R. Sec. 2520.104-23(a) (1984).
 
 
 35
 The regulation provides that, "The administrator [of such a plan] shall be deemed to satisfy the reporting and disclosure provisions of Part 1 of Title I of the Act by--(1) Filing a statement with the Secretary of Labor [containing identifying and descriptive information and a declaration of purpose] and (2) Providing plan documents, if any, to the Secretary upon request ..." (emphasis added). The regulation requires that such statements be filed by August 31, 1975, for plans in existence on May 4, 1975, or "within 120 days after the plan becomes subject to Part 1." 29 C.F.R. Sec. 2520.104-23(b)(2).
 
 
 36
 The district court concluded, in granting summary judgment for defendants, that this regulation eliminated the statutory requirement in 29 U.S.C. Sec. 1025 that a plan administrator provide an accounting upon request. It followed that Barrowclough's claim of damages under 29 U.S.C. Sec. 1132(c) for Kidder, Peabody's failure to provide the accounting stated no cause of action.
 
 
 37
 Since the statutory provision authorizing the Secretary to prescribe an "alternative method of compliance" is clear, and the regulation promulgating such an alternative method is equally clear, we reject appellants' contention that this regulation was not intended to foreclose enforcement of 29 U.S.C. Sec. 1025 by individuals denied an accounting. The regulation provides a safe harbor for such plans from all the requirements of Part 1 as to disclosure and reporting. It states that an administrator who complies with the regulation "shall be deemed to satisfy the reporting and disclosure provisions of Part 1." 29 C.F.R. Sec. 2520.104-23(b). Furthermore, the Secretary has made the requisite determinations, see supra note 9, in the finding accompanying the regulation that, "The class of employees with respect to whom this alternative method of compliance applies--highly compensated or management employees--generally have ready access to information concerning their rights and obligations and do not need the protections afforded them by Part 1 of Title I of the Act." 40 Fed.Reg. 34,530 (1975). In light of this unambiguous language, the regulation must be construed as intended to occupy the full scope permitted by 29 U.S.C. Sec. 1030 and to provide an alternative method of compliance as to all the substantive requirements of Part 1, including the accounting requirement of 29 U.S.C. Sec. 1025 invoked by plaintiffs.
 
 
 38
 Barrowclough's contention that the district court should not have granted summary judgment on the counts claiming failure to provide an accounting without first determining whether Kidder, Peabody complied with the regulation is meritorious. Both the statute authorizing the regulation and the regulation itself are framed in terms of "alternative method[s] for satisfying" the statutory requirements. See 29 U.S.C. Sec. 1030(a); 29 C.F.R. Sec. 2520.104-23(a)(1), (b)(1-2) (emphasis added). It follows that if Kidder, Peabody failed to provide the Secretary with the required statement or the plan documents if requested by the Secretary, it did not utilize the "alternative method," and therefore the statutory obligation requiring an accounting continued to apply.
 
 
 39
 The burden of proof to show compliance with the "alternative method" was on Kidder, Peabody. In Securities & Exchange Commission v. Ralston Purina Co., 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953), an issuer of securities claimed exemption from the requirements of the Securities and Exchange Act of 1933 on the ground that the offering was a private one. The Court held that an issuer who sought the protection of the safe harbor for private offerings bore the burden of proving that the offering was private, because of the "broadly remedial purposes of federal securities legislation." Id. at 126, 73 S.Ct. at 985.
 
 
 40
 ERISA has similarly broad remedial purposes. However, the record does not disclose whether Kidder, Peabody complied with the regulation, and the district court made no finding on that issue. There remains, therefore, an issue of material fact as to whether the Plan is entitled to rely on the safe harbor regulation, and summary judgment on Count 1 was improper.
 
 
 41
 Kidder, Peabody argues that, in any event, it complied with the statutory accounting requirement. We reject its suggestion that Krantz' letter to Barrowclough within the required period stating that no payments would be made obviates the necessity for complying with the statutory requirement to provide a "statement indicating ... the total benefits accrued" within the meaning of 29 U.S.C. Sec. 1025(a).
 
 
 42
 Kidder, Peabody next argues that Barrowclough was not entitled to an accounting. The statute gives such a right to any plan "participant" or beneficiary, and defines "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan ..." 29 U.S.C. Sec. 1002(7) (emphasis added). Kidder, Peabody relies on cases holding that former employees (or their beneficiaries) whose rights have not vested or who have not qualified to receive benefits are not "participants" entitled to an accounting under this standard of present or future eligibility. See Weiss v. Sheet Metal Workers Local No. 544 Pension Trust, 719 F.2d 302, 304 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 2347, 80 L.Ed.2d 821 (1984); Hernandez v. Southern Nevada Culinary and Bartenders Pension Trust, 662 F.2d 617, 620-21 (9th Cir.1981); cf. Nugent v. Jesuit High School, 625 F.2d 1285, 1286-88 (5th Cir.1980). Those individuals whose benefits never accrued are not in the same position as Barrowclough, who concededly had accrued benefits. The employer's claim of set-off against those benefits cannot render Barrowclough a non-participant. If the right to an accounting were dependent on the ultimate outcome of any dispute as to payment, the statutory provision requiring an accounting would be rendered nugatory. We decline to limit 29 U.S.C. Sec. 1025 in this manner.
 
 
 43
 Kidder, Peabody also contends that because it provided Barrowclough with a written accounting in July 1982, he was not entitled to another accounting until a year had passed. We must read in tandem the two relevant provisions of the Act, one providing that "Each administrator of an employee pension benefit plan shall furnish to any plan participant ... who so requests in writing, a statement ... on the basis of the latest available information...." 29 U.S.C. Sec. 1025(a) (emphasis added), and the other providing that "In no case shall a participant or beneficiary be entitled under [29 U.S.C. Sec. 1025] to receive more than one report described in [29 U.S.C. Sec. 1025(a) ] during any one 12 month period," 29 U.S.C. Sec. 1025(b). Although the limitation in 29 U.S.C. Sec. 1025(b) is somewhat ambiguous, we construe it to mean that a participant or beneficiary is entitled to request and receive an accounting per 12 months in addition to any regular accounting that each Plan may provide, such as the annual accounting provided for by Art. 9, Sec. 9.5 of this Plan.
 
 
 44
 The legislative history supports this construction. The House Conference Report's description of this provision states,
 
 
 45
 Upon the request of a plan participant or beneficiary, a plan administrator is to furnish on the basis of the latest available information the total benefits accrued and the nonforfeitable pension benefit rights, if any, which have accrued. No more than one request may be made by any participant or beneficiary for this information during any one 12-month period.
 
 
 46
 H.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 259, reprinted in 1974 U.S.Code Cong. & Ad.News 5038, 5042 (emphasis added).
 
 
 47
 Moreover, this construction is consistent with the policy underlying the disclosure provisions of ERISA. ERISA replaced the much more limited disclosure provisions of the Welfare and Pension Plans Disclosure Act, see Act of Aug. 28, 1958, Secs. 6-9, 72 Stat. 999-1002 (amended 1962) (formerly codified at 29 U.S.C. Secs. 305-308), repealed by 29 U.S.C. Sec. 1031(a)(1) (1982), which Congress found insufficient because they failed to require disclosure of an individual's benefit status.[10] If a participant or beneficiary who has a pressing need for an accounting at a significant time, such as upon termination of employment, disability, or vesting, is unable to receive it upon a request, his or her financial planning would be impaired and his or her effort to enforce the rights and fiduciary obligations imposed by ERISA would be severely hampered. We conclude that Barrowclough was entitled to request an accounting in December 1982, that Krantz' letter was not a statutorily adequate response, and that Kidder, Peabody was obliged to provide an accounting unless the Plan fell within the regulation's exemption.
 
 
 48
 The strict construction we have given to 29 U.S.C. Sec. 1025 and 29 U.S.C. Sec. 1132(c) is not inconsistent with our initial holding that the Secretary's regulation may exempt the Plan from compliance with the reporting and disclosure requirements. Both conclusions are derived from the legislative intent. The legislative history shows that the drafters of ERISA believed that individualized reporting and disclosure would play an important role in effectuating ERISA's goals. See supra note 10; S.Rep. No. 127, 93d Cong. 2d Sess. 27, reprinted in 1974 U.S.Code Cong. & Ad.News 4838, 4863; 120 Cong.Rec. 29,200 (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 5166, 5171 (statement of Rep. Ullman); 120 Cong.Rec. 29,195 (1984), reprinted in 3 Legislative History of ERISA 4665 (1976) (remarks of Rep. Dent). See also 29 U.S.C. Sec. 1101(b) (Congressional policy to require disclosure and reporting). The accounting provision, which is broadly applicable, must be construed so as to protect the employees' interests. On the other hand, Congress and the Department of Labor have determined that the management and highly compensated employees who participate in unfunded deferred compensation plans do not need the same level of protection, and hence may be exempted from this Part of the statute. See 40 Fed.Reg. 34,530 (1975); Goodman & Stone, supra, 28 Cath.U.L.Rev. at 468. The willingness of the drafters to exempt this limited group of plans does not suggest that we should give a lax construction to the disclosure provisions, when applicable.
 
 
 49
 We will remand the claim in Count 2 to the district court for a determination whether Kidder, Peabody achieved "alternative compliance" under 29 C.F.R. Sec. 2520.104-23. In the absence of such compliance, the district court should decide whether to award damages under 29 U.S.C. Sec. 1132(c) against Kidder, Peabody for its failure to provide an accounting within 30 days of Barrowclough's written request.
 
 2. Fiduciary Responsibility Claim
 
 50
 In Count 4 plaintiffs contend that Kidder, Peabody's decision to withhold vested benefits in satisfaction of debts owed them by Barrowclough violated ERISA's "exclusive benefit rule" which states:
 
 
 51
 [T]he assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.
 
 
 52
 29 U.S.C. Sec. 1103(c)(1). Since this section falls within Part 4, the district court granted summary judgment on this count because unfunded plans such as Kidder, Peabody's are excluded from this part by 29 U.S.C. Sec. 1101(a)(1).
 
 
 53
 Barrowclough argues that because the Plan "is replete with provisions evidencing the fact that Kidder drafted the Plan with the very provisions of ERISA in mind which were claimed in the District Court to be inapplicable," the "symmetry between the Plan and ERISA is sufficient, as a matter of law, to overcome this facial similarity [to an exempted deferred compensation plan], particularly when the statute is liberally construed, as it must be, in favor of the beneficiaries and participants of the Plan." Brief for Appellants at 49.
 
 
 54
 Appellants support this obscure argument by reference to the anti-alienation clause of the Plan, which they contend serves to preclude or waive application of the exemption. See supra note 2. We see no merit in this contention. Although some deferred compensation plans, nominally unfunded and exempt, may on closer inspection be found to be disguised versions of ordinary pension plans to which ERISA applies, Barrowclough has proffered no evidence that such is the case with the Kidder, Peabody plan, which is concededly unfunded. The inclusion of the anti-alienation clause in the Plan does not signify that Kidder, Peabody has waived or lost the exemption of 29 U.S.C. Sec. 1101(a)(1). The grant of summary judgment on Count 4 on the ground that it failed to state a claim for breach of fiduciary responsibility under ERISA will be affirmed.
 
 3. Claim under ERISA for Breach of the Plan
 
 55
 Count 1 of the complaint alleges that Kidder, Peabody breached the terms of its agreement under the Plan to pay accrued benefits to Barrowclough. Plaintiffs contend that they can bring suit in federal court for breach of the terms of an ERISA plan pursuant to 29 U.S.C. Sec. 1132(a). This section falls within Part 5 of ERISA, termed Administration and Enforcement.
 
 
 56
 The district court recognized that there is no statutory provision exempting unfunded plans for highly compensated employees from Part 5. However, the court held that "the success of any action brought under Part depends on whether any of [the] provisions in Parts [1-4] have been violated. Since the Deferred Compensation Plan is exempt from Parts [1-4], plaintiffs have no cause of action which they may enforce under the provisions of Part ." App. at 129a.
 
 
 57
 The district court cited no statutory language or any authority elsewhere as support for its construction. Its restrictive view of the scope of Part 5 is directly contrary to the language of 29 U.S.C. Sec. 1132(a), which states, in relevant part:
 
 
 58
 A civil action may be brought--
 
 
 59
 (1) by a participant or beneficiary--
 
 
 60
 ....
 
 
 61
 (B) to recover benefits due to him under the terms of his plan, to enforce his right under the terms of the plan or to clarify his rights to future benefits under the terms of the plan;
 
 
 62
 ....
 
 
 63
 (3) by a participant, beneficiary or fiduciary
 
 
 64
 (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
 
 
 65
 (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
 
 
 66
 (emphasis added).
 
 
 67
 The plain language of 29 U.S.C. Sec. 1132(a) provides a cause of action either to enforce the substantive provisions of the Act or to recover benefits due or otherwise enforce the terms of a particular plan. The legislative history is to the same effect, containing express references to federal suits to enforce the terms of a plan even though such suits may not include claims for violations of ERISA. See, e.g., H.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 327, reprinted in 1974 U.S.Code Cong. & Ad.News 5038, 5106-07. Furthermore, this court has repeatedly considered claims for benefits by participants or beneficiaries that are based on the terms of or rights under a plan as falling within 29 U.S.C. Sec. 1132. See Struble v. New Jersey Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 330-31 (3d Cir.1984); Wolf v. National Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir.1984); Murphy v. Heppenstall Co., 635 F.2d 233, 237 (3d Cir.1980), cert. denied, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982); cf. Livolsi v. Ram Construction Co., 728 F.2d 600, 602 (3d Cir.1984).
 
 
 68
 In fact, the jurisdictional provisions in the statutory scheme as set forth in 29 U.S.C. Sec. 1132(e) reinforces the conclusion that ERISA establishes federal jurisdiction for suits claiming breach of contract of an employee benefit plan. Under that section, federal courts are given exclusive jurisdiction over suits brought for violation of the positive law provisions of ERISA.[11] In contrast, suits brought to declare the rights of a participant or a beneficiary under a plan or to recover benefits due under a plan are within the concurrent jurisdiction of federal and state courts, Livolsi, 728 F.2d at 602-03; H.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 327, reprinted in 1974 U.S.Code Cong. & Ad.News at 5107. If claims under a plan were not cognizable under ERISA, the concurrent jurisdiction provision would be meaningless.
 
 
 69
 In providing a cause of action and concurrent federal and state court jurisdiction over claims for benefits Congress intended to follow the model of section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, which governs suits arising under a collective-bargaining agreement, id.[12] See Murphy v. Heppenstall Co., 635 F.2d at 237-39.
 
 
 70
 Under section 301 of the LMRA, suit for breach of a collective bargaining agreement may be brought either in federal or state court, but the applicable law in either forum is federal common law. See Local 174 Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 101-04, 82 S.Ct. 571, 575-77, 7 L.Ed.2d 593 (1962). The importance of federal labor policy and the demands of uniformity in its application to the terms of collective bargaining agreements made it necessary to develop federal legal principles governing such disputes. Id. at 103-04, 82 S.Ct. at 576-77. The same reasoning requires development and application of federal common law to plans covered by all or portions of ERISA.
 
 
 71
 In Murphy v. Heppenstall Co., 635 F.2d at 237, we pointed out that 29 U.S.C. Sec. 1144 "preempts any state law relating to ERISA-covered pension plans." Accordingly, we concluded that, "In enacting ERISA, Congress authorized the evolution of a federal common law of pension plans." Id. See also Woodfork v. Marine Cooks & Stewards Union, 642 F.2d 966, 972-73 (5th Cir.1981); Paris v. Profit Sharing Plan of Howard B. Wolf, Inc., 637 F.2d 357, 361-62 (5th Cir.), cert. denied, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981).
 
 
 72
 Since the unfunded deferred compensation plans, such as the one at issue here, have not been totally excluded by definition from ERISA, we reject Kidder, Peabody's contention that the exemption of such plans from other substantive provisions of ERISA signifies a congressional intent to exempt them from 29 U.S.C. Sec. 1132 as well. Had Congress so intended, it could have done so expressly by exempting such plans from that provision in particular or from Part 5 in general. In enacting a version of ERISA that contained only partial exemptions for such plans, Congress must be deemed to have intended to afford the participants and beneficiaries a federal forum to enforce the terms of their plans.
 
 
 73
 We therefore conclude that Count 1 of Barrowclough's complaint stated a cause of action under ERISA to enforce the terms of the Plan under principles of federal common law. Therefore, we will direct the district court to reinstate Count 1 of the complaint.
 
 IV.
 CLAIMS SUBJECT TO ARBITRATION
 
 74
 Barrowclough also contends that the district court erred in compelling arbitration, staying its own proceedings, and declining to stay the arbitration proceedings. That order was based in part on the court's determination that Barrowclough failed to state any claim under ERISA. In that posture, the district court remitted to arbitration only state law claims asserted in the pendent counts. Since we have held that Count 1 and possibly Count 2 state claims under ERISA, the arbitrability issue is substantially altered. The arbitrator's decision does not moot this issue, since the district court must determine the effect of that decision on the pendent claims, as well as on the Count 1 ERISA claim. Therefore, in order to provide guidance on remand and in the interest of judicial economy, we will address the parties' contentions as to the arbitrability of Barrowclough's claims. Cf. Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 682 F.2d 459, 460 (3d Cir.1982); Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1030-31 (6th Cir.1979).
 
 A. Scope of Agreement to Arbitrate Disputes
 
 75
 Appellants contend the district court erred in compelling arbitration because Barrowclough and his beneficiaries never agreed to submit disputes arising under the Plan to arbitration. Federal law applies in construing an arbitration clause when, as here, the motions pertaining to arbitration are brought pursuant to the Federal Arbitration Act, 9 U.S.C. Secs. 1-13 (1982). See, e.g., Goodwin v. Elkins & Co., 730 F.2d 99, 108 (3d Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984).[13]
 
 
 76
 Barrowclough's agreement with the New York and American Stock Exchanges required him to submit all disputes "arising out of my employment or the termination of my employment." The arbitration agreement is not invalid, as Barrowclough contends, merely because it is required of all registered brokers by New York Stock Exchange Rule 347. See, e.g., O'Neel v. National Association of Securities Dealers, Inc., 667 F.2d 804, 806 (9th Cir.1982); Drayer v. Krasner, 572 F.2d 348, 353-54 (2d Cir.1978) (Friendly, J.), cert. denied, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978); Tullis v. Kohlmeyer & Co., 551 F.2d 632, 636-37 (5th Cir.1977); Muh v. Newburger, Loeb & Co., 540 F.2d 970 (9th Cir.1976).
 
 
 77
 Turning, then, to the scope of the arbitration agreement, which Barrowclough stresses does not refer to the Plan or contain any waiver of rights under the Plan, we recognize that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); Trustees of the Local 478 Trucking and Allied Industries Pension Fund v. Siemens Corp., 721 F.2d 451, 454 (3d Cir.1983). However, when contract language is ambiguous or unclear, a "healthy regard" for the federal policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1983).
 
 
 78
 Courts have broadly construed identical or similar arbitration agreements between individuals and the stock exchanges to mean what the language says, i.e., that "all disputes" arising out of [the] employment or the termination of ... employment" of the registered representative are subject to arbitration. See, e.g., Stokes v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 523 F.2d 433, 437 (6th Cir.1975) (profit sharing plan).[14] The dispute over Barrowclough's deferred compensation patently arises out of and relates to his employment with Kidder, Peabody. Since it is the arbitration agreement that imposes the obligation to arbitrate, we deem it irrelevant that the Plan fails to refer to arbitration and that the agreements to arbitrate and to defer compensation were not entered into simultaneously.
 
 
 79
 Appellants argue the arbitration agreement is unenforceable because neither Barrowclough's contingent beneficiaries under the Plan who have joined as plaintiffs nor certain "Plan Defendants" who are being sued as representative or subentities of Kidder, Peabody are bound by Barrowclough's agreement to arbitrate. First, even if the non-signatories were not bound by the arbitration agreement, this would not impede enforcement of arbitration as between Barrowclough and Kidder, Peabody. As the Supreme Court stated in Moses H. Cone Memorial Hospital, 460 U.S. at 20, 103 S.Ct. at 939:
 
 
 80
 [F]ederal law requires piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.
 
 
 81
 (emphasis in original) (footnotes omitted). Moreover, in such cases the district court, "as a matter of its discretion to control its docket" may "stay litigation among the non-arbitrating parties pending the outcome of the arbitration." Id. at 20 n. 23, 103 S.Ct. at 939 n. 23. Since the non-parties to this arbitration agreement have related and congruent interests with the principals to the litigation, the district court did not abuse its discretion in refusing to stay the arbitration.
 
 
 82
 Second, a variety of non-signatories of arbitration agreements have been held to be bound by such agreements under ordinary common law contract and agency principles. See, e.g., In re Oil Spill by the Amoco Cadiz, 659 F.2d 789, 795-96 (7th Cir.1981); Fisser v. International Bank, 282 F.2d 231, 233-34 (2d Cir.1960); Hartford Financial Systems, Inc. v. Florida Software Services, Inc., 550 F.Supp. 1079, 1086-87 (D.Me.1982), appeal dismissed, 712 F.2d 724 (1st Cir.1983). The additional defendants, who are directly tied to Kidder, Peabody, do not object to arbitration. The plaintiffs who join with Barrowclough claim no present entitlement to the deferred compensation and press no claims separate from his. Their inchoate and derivative claims should not entitle them to maintain separate litigation in a forum that has been waived by the principal beneficiary. This case remains, notwithstanding their joinder, a dispute between an employer and an employee arising out of the employment relationship that should be subject to the employee's agreement to arbitrate. Thus, we conclude that the agreement to arbitrate was valid, and bound Barrowclough and the other plaintiffs in the circumstances presented here.
 
 B. Arbitration of Claims Under ERISA
 
 83
 Barrowclough further contends that the arbitration is inconsistent with the strong policy of ERISA in favor of federal court access, a contention we address in light of our reinstatement of certain ERISA claims.
 
 
 84
 Before the establishment by ERISA of a federal realm of pension law, pension issues were generally held arbitrable. See Schneider, Surviving ERISA Preemption: Pension Arbitration in the 1980's, 16 Colum.J.L. & Soc.Probs. 269, 276-77 (1980). With the enactment of ERISA, we must now accommodate its policy of providing federal court access and federal law remedies to pension claimants and their beneficiaries with the federal policy favoring enforcement of arbitral agreements embodied in the Federal Arbitration Act, 9 U.S.C. Secs. 1-13 (1982).
 
 
 85
 We conclude the most reasonable accommodation is to hold that claims to establish or enforce rights to benefits under 29 U.S.C. Sec. 1132(a) that are independent of claims based on violations of the substantive provisions of ERISA are subject to arbitration, see Viggiano v. Shenango China Division of Anchor Hocking Corp., 750 F.2d 276, 280-81 (3d Cir.1984); Air Line Pilots Ass'n v. Northwest Airlines, Inc., 627 F.2d 272, 275-76 (D.C.Cir.1980); Fox v. Merrill Lynch & Co., Inc., 453 F.Supp. 561, 565-66 (S.D.N.Y.1978), while claims of statutory violations can be brought in a federal court notwithstanding an agreement to arbitrate. See Amaro v. Continental Can Co., 724 F.2d 747, 749-50 (9th Cir.1984); Lewis v. Merrill Lynch, Pierce, Fenner & Smith, 431 F.Supp. 271, 274-78 (E.D.Pa.1977); cf. Air Line Pilots Ass'n, 627 F.2d at 277-78 (statutory claims not subject to arbitration under Railway Labor Act). Under the distinction we make between statutory and contractual claims, ERISA neither completely supplants nor is completely subordinate to arbitration.[15] Accord, Schneider, supra, 16 Colum.J.L. & Soc.Probs. 278-85, 318-23; Murphy, The Impact of ERISA on Arbitration, 32 Arb.J. 123 (1977); Donaldson, The Use of Arbitration to Avoid Litigation under ERISA, 17 Wm. & Mary L.Rev. 215 (1975).
 
 
 86
 As we have discussed above, there was a deliberate parallel made by Congress between section 502(a) of ERISA, 29 U.S.C. Sec. 1132(a), and section 301 of the LMRA, 29 U.S.C. Sec. 185. Both provide for concurrent federal and state jurisdiction over contractually based claims for benefits, and neither provides specific federal legal content to govern these federal contractual claims, thus permitting development of common law principles based at least partly on state law experience. Given this parallelism, it is reasonable to conclude that Congress intended that contractually-based pension claims would remain subject to arbitral resolution just as contractually-based claims for breach of a collective-bargaining agreement have been held to be subject to arbitral resolution. See The Steelworkers Trilogy, United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Accordingly, the claim presented in Count 1 of the complaint to enforce the terms of the Plan and to recover benefits provided by the Plan was subject to arbitration.[16]
 
 
 87
 In contrast, Barrowclough's claim for damages under 29 U.S.C. Sec. 1132(c) for failure to provide an accounting as required by 29 U.S.C. Sec. 1025 presents a pure statutory issue. That issue is within the exclusive jurisdiction of the federal courts. See 29 U.S.C. Secs. 1132(a)(3) & 1132(e); Livolsi, 728 F.2d at 602-03.
 
 
 88
 There is an inherent incompatibility in referring to an arbitrator claims that fall within the exclusive jurisdiction of the federal courts and that arise as part of a comprehensive federal statutory scheme designed to assure protection to those individuals who fall within it. The Supreme Court has reached a similar conclusion with regard to analogous federal protective statutes. In Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Court held that wage claims based on rights arising out of the Fair Labor Standards Act could be brought in federal court notwithstanding the prior completion of arbitration as required by a collective bargaining agreement. The Court emphasized that:
 
 
 89
 While courts could defer to an arbitral decision where the employee's claim is based on rights arising out of the collective bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.
 
 
 90
 Id. at 737, 101 S.Ct. at 1443. Other factors to which the Court referred, also applicable here, were the statutory provision for broad access to the courts; the absence of provisions requiring exhaustion or establishing procedural barriers; the non-waivability of rights under the FLSA by custom or contract; the better competency of courts to decide the complex legal issues that are intertwined with the factual questions in wage cases under the FLSA; and the broader range of relief available from a federal court than from an arbitrator. Id. at 740-45, 101 S.Ct. at 1444-47.
 
 
 91
 Barrentine relied upon a similar decision in Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), holding that an individual could maintain an action under Title VII of the Civil Rights Act of 1964 notwithstanding a prior unsuccessful resort to arbitration on a claim of unjust dismissal. In addition to the factors referred to in Barrentine, the Court in Alexander mentioned the deficiency of arbitral procedures in protecting the substantial rights created by Title VII in a manner "commensurate with judicial processes." Id. at 56, 94 S.Ct. at 1024. The Court concluded that "the resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts." Id. at 57, 94 S.Ct. at 1024.[17]
 
 
 92
 The substantive protections of ERISA establish a complex and evolving body of federal law designed to protect the benefits of the vast number of workers covered by employee benefit plans. Congress intended that "minimum standards be provided assuring the equitable character of such plans and their financial soundness," including provisions that "disclosure be made and safeguards be provided with respect to the establishment, operation and administration of such plans," 29 U.S.C. Sec. 1001(a). Congress further sought "to protect ... the interests of participants and beneficiaries, by requiring the disclosure and reporting to participants in employee benefit plans and their beneficiaries of financial and other information with respect thereto ... and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. Sec. 1001(b).
 
 
 93
 These rights may not be foreclosed by a contractual arbitration agreement. See Amaro v. Continental Can Co., 724 F.2d at 752. Moreover, arbitration of statutory issues would be inconsistent with Congress' goal, evident in the jurisdictional and preemption provisions of ERISA, to provide a consistent source of law to "help administrators, fiduciaries and participants to predict the legality of proposed actions." S.Rep. No. 127, 93d Cong., 1st Sess. 29, reprinted in 1974 U.S.Code Cong. & Ad.News 4838, 4865. This intent would be frustrated if arbitrators, who are not bound to consider law or precedent in their decisions, and who decide issues primarily on contractual grounds, had a conclusive role in deciding such claims. Accordingly, we conclude that the claim in Count 2 based on Kidder, Peabody's failure to provide an accounting was not subject to arbitration. We will affirm the district court's referral of the remaining claims to arbitration, its stay of its own proceedings pending such arbitration, and its denial of plaintiffs' motion to enjoin arbitration.
 
 V.
 CONCLUSION
 
 94
 In summary, therefore, we have concluded that ERISA does not have a blanket exemption for unfunded deferred compensation plans for select managerial or highly compensated employees although such plans are exempt from certain of its substantive provisions; that an administrative regulation at 29 C.F.R. Sec. 2520.104-23 provides such plans a safe harbor from enforcement of the reporting and disclosure provisions of Part 1 of ERISA, but that the administrative exemption is applicable only if the regulation had been complied with; that if there was no compliance with the regulation, a participant such as Barrowclough is entitled to receive an accounting of accrued benefits under 29 U.S.C. Sec. 1025 upon request once a year; and that the notification that Kidder, Peabody would assert a set-off against the entirety of the accrued benefits did not excuse the Plan from the requirement to provide the requested accounting.
 
 
 95
 We have concluded that such unfunded deferred compensation plans are exempted from the fiduciary responsibility rules contained in Part 4 of ERISA and that plaintiffs presented no genuine issue of material fact that the Kidder, Peabody plan should be treated as other than such an exempt plan.
 
 
 96
 However, we have concluded that under 29 U.S.C. Sec. 1132(a) plaintiffs have a federal cause of action for breach of the terms of a plan, that such an action may be brought either in federal or state court, and that federal common law is to be applied.
 
 
 97
 Finally, we have concluded that Barrowclough's contract to submit to arbitration disputes arising out of his employment covered his right to accrued benefits under this Plan; that this agreement was valid and binding, and applied to his beneficiaries whose interests were derivative of his; and that the agreement to arbitrate applied to the ERISA claim for breach of the Plan but that it did not subject plaintiffs' statutory claim for damages based on defendants' failure to provide an accounting to arbitration.
 
 We have ruled as follows:
 
 98
 1. We will affirm the district court's grant of summary judgment to defendants on Count 4 of the complaint charging a violation of ERISA Part 4.
 
 
 99
 2. We will vacate the district court's grant of judgment for the defendants on Count 2 of the complaint charging defendants failed to provide an accounting as required in 29 U.S.C. Sec. 1025(a) and seeking damages pursuant to 29 U.S.C. Sec. 1132(c) and remand to the district court for a determination whether Kidder, Peabody achieved "alternative compliance" under 29 C.F.R. Sec. 2520.104-23.
 
 
 100
 3. We will reverse the district court's grant of judgment for the defendants on Count 1 of the complaint and remand to the district court for further proceedings consistent with this opinion. The district court should, on remand, determine what effect, if any, the arbitration award has on plaintiffs' claim in this count.
 
 
 101
 4. We will affirm the district court's referral of the remaining claims to arbitration, its stay of its own proceedings pending such arbitration, and its denial of plaintiffs' motion to enjoin arbitration. Upon remand the district court should determine the effect, if any, on these claims of the arbitral decision.
 
 
 102
 Each party is to bear its own costs.
 
 
 
 *
 Hon. John P. Fullam, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The Plan provides:
 Title to and beneficial ownership of any assets which the Company may earmark, for internal accounting purposes, to pay deferred compensation under the Plan shall at all times remain in the Company and a Participating Employee and his or her Beneficiary (by reason of his or her status as such) shall not have any property interest whatsoever in any specific assets of the Company.
 Article 4, Sec. 4.3.
 
 
 [2]
 Article 9, Sec. 9.5 of the deferred compensation plan provides:
 Unless otherwise permitted by the Committee, the right of any Participating Employee or his Beneficiary to any payment under the Plan shall not be subject in any manner to attachment or other legal process for the debts of such Participating Employee or his Beneficiary and any such payment shall not be subject to anticipation, alienation, sale, transfer, assignment or encumbrance, in each case to the extent permitted by applicable law.
 
 
 [3]
 The New York Stock Exchange agreement signed by Barrowclough provided, "Any controversy between me and any member or member organization arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the Exchange." App. at 55a. The American Stock Exchange agreement similarly provided, "I agree that any controversy between me and any member or member organization of the American Stock Exchange, Inc. arising out of my employment or the termination of my employment by and with such member or member organization ... shall be settled by arbitration at the instance of any such party in accordance with the Constitution and Rules then obtaining of the American Stock Exchange, Inc. or if the employer be a member or member organization of the New York Stock Exchange, Inc., in accordance with the Constitution and Rules of that Exchange." App. at 56a
 
 
 [4]
 Appellants have not claimed the district court committed any error with respect to the claim under ERISA contained in Count 3, for breach of fiduciary duty, and apparently deliberately avoided calling this part of Count 3 to the district court's attention. In any event, its disposition would follow that of Count 4 which also presents a claim arising under the same fiduciary responsibility provisions. Insofar as Counts 3 and 4 seek the relief also sought in Counts 1 and 2 to enforce the terms of the Plan and to require an accounting, they are redundant
 
 
 [5]
 Plaintiffs did not file a second notice of appeal, but moved before this court to amend the notice of appeal to refer as well to the orders of the district court dated October 21 and November 3
 
 
 [6]
 The arbitral decision, issued June 27, 1984, stated:
 [T]hat on the claim for Deferred Compensation Respondent [Kidder, Peabody] shall pay to Claimant [Barrowclough] the sum of $89,072.70 plus interest from December 31, 1982 as determined by the Deferred Compensation Plan dated July 28, 1983. The claim for withheld commissions is denied.
 As to the counterclaim, Claimant shall pay Respondent the sum of $100,000.00.
 That the costs, $2,750.00 which are payable to the New York Stock Exchange, Inc., be and hereby are assessed against the Respondent. Kidder Peabody & Company Inc. shall pay to the claimant the sum of $550.00, representing the refund for deposit of costs.
 
 
 [7]
 The requirement that exempt plans be unfunded is designed to ensure that the employees can defer their income, through such plans, to a future taxable year. Under 26 U.S.C. Sec. 83 (1982), "property" transferred in connection with the performance of services is taxable immediately, but 26 C.F.R. Sec. 1.83-3(e) (1984) excludes from the definition of property "an unfunded and unsecured promise to pay money in the future." See generally R. Osgood, The Law of Pensions and Profit-Sharing Sec. 10 (1984)
 
 
 [8]
 The relevant provision, which occurs in Part 5, states that:
 Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
 29 U.S.C. Sec. 1132(c) (emphasis added).
 
 
 [9]
 The Secretary must determine:
 (1) that the use of such alternative method is consistent with the purposes of this subchapter [Subchapter I] and that it provides adequate disclosure to the participants and beneficiaries in the plan, and adequate reporting to the Secretary.
 (2) that the application of such requirement of this part would
 (a) increase the costs to the plan, or
 (b) impose unreasonable administrative burdens with respect to the operation of the plan, having regard to the particular characteristics of the plan or the type of plan involved; and
 (3) that the application of this part would be adverse to the interests of plan participants in the aggregate.
 29 U.S.C. Sec. 1030.
 
 
 [10]
 As the House Committee Report explained:
 It was expected [under the prior Act] that the information disclosed would enable employees to police their plans. But experience has shown that the limited data available under the present Act is insufficient. Changes are therefore required to increase the information and data required in the reports both in scope and detail. Experience has also demonstrated a need for a more particularized form of reporting so that the individual participant knows exactly where he stands with respect to the plan .... [T]he safeguarding effect of the fiduciary responsibility section will operate efficiently only if fiduciaries are aware that the details of their dealings will be open to inspection, and that individual participants and beneficiaries will be armed with enough information to enforce their own rights as well as the obligations owed by the fiduciary to the plan in general.
 H.Rep. No. 533, 93d Cong. 2d Sess. 11, reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4649.
 
 
 [11]
 29 U.S.C. Sec. 1132(e)(1) provides:
 (e)(1) Except for actions under subsection (a)(1)(B) of this section, [to enforce or recover under a plan] the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.
 
 
 [12]
 The Conference Report states:
 Under the conference agreement, civil actions may be brought by a participant or beneficiary to recover benefits due under the plan, to clarify rights to receive future benefits under the plan, and for relief from breach of fiduciary responsibility. The U.S. district courts are to have exclusive jurisdiction with respect to actions involving breach of fiduciary responsibility as well as exclusive jurisdiction over other actions to enforce or clarify benefit rights provided under title I. However, with respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947. The U.S. district courts are to have jurisdiction of these actions without regard to the amount in controversy and without regard to the citizenship of the parties.
 H.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 327, reprinted in 1974 U.S.Code Cong. & Ad.News at 5107.
 
 
 [13]
 The parties do not dispute that the undertakings to arbitrate were contained in "a transaction involving commerce," within the meaning of the Federal Arbitration Act, 9 U.S.C. Sec. 2. Identical agreements have been held or assumed to meet this statutory requirement. See, e.g., Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 538 F.2d 532, 534 n. 4 (3d Cir.), cert. denied, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976); Dickstein v. duPont, 443 F.2d 783, 785 (1st Cir.1971); but cf. Goodwin v. Elkins & Co., 730 F.2d at 108-09
 
 
 [14]
 In Stokes, the issue referred to arbitration concerned the amounts allegedly due employees under a profit sharing plan. Other similar issues have also been held arbitrable. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey, 726 F.2d 1286 (8th Cir.1984) (non-solicitation clause); Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 725 F.2d 192 (2d Cir.1984) (same); O'Neel v. National Ass'n of Securities Dealers, Inc., 667 F.2d 804 (former employee's liability in suit by dissatisfied customer); Drayer v. Krasner, 572 F.2d 348 (wrongful termination); Dickstein v. duPont, 443 F.2d 783 (finder's fee)
 
 
 [15]
 Because the Kidder, Peabody plan did not provide for arbitration as an internal appeal procedure of the deferred compensation plan, we need not decide whether arbitration is required in order to exhaust internal remedies under 29 U.S.C. Sec. 1133. Compare, e.g., Kross v. Western Electric Co., 701 F.2d 1238, 1243-45 (7th Cir.1983) (claimant must exhaust internal remedies of plan before bringing suit for unlawful discharge under 29 U.S.C. Sec. 1140) with Amaro v. Continental Can Co., 724 F.2d at 750-53 (exhaustion not required prior to suit for violation of 29 U.S.C. Sec. 1140)
 
 
 [16]
 Our decision in Trustees of Local 478 Trucking and Allied Industries Pension Fund v. Siemens Corp., 721 F.2d 451 (3d Cir.1983), on which Barrowclough relies, is inapposite. The arbitration clause did not apply to the trustees who brought that action, and the policy concerns that guided our holding there are inapplicable in a case such as this
 
 
 [17]
 The Supreme Court has also held that contractually-based arbitration does not foreclose suit under 42 U.S.C. Sec. 1983, see McDonald v. City of West Branch, --- U.S. ----, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), and for violations of the Securities Act of 1933, Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). This court has held that certain claims in bankruptcy are not subject to arbitration, see Zimmerman v. Continental Airlines, Inc., 712 F.2d 55, 58-60 (3d Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), and that by extension of Wilko v. Swan claims under the Securities Act of 1934 are not arbitrable, see Ayres v. Merrill Lynch, Pierce, Fenner & Smith, 538 F.2d 532, 536-37 (3d Cir.), cert. denied, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976); see also Kovats v. Rutgers, 749 F.2d 1041, 1048-1049 (3d Cir.1984) (due process claim not barred by arbitral result)