**Joseph M. STARR, Plaintiff,**

v.

**JCI DATA PROCESSING, INC. and Victor L. Johnson, Defendants.**

Civ. No. 89–2970(SSB).

United States District Court, D. New Jersey.

Feb. 4, 1991.

Louis Rosner, Philadelphia, Pa., for plaintiff.

William S. Greenberg, Karen L. Jordan, Sills, Cummis, Zuckerman, Radin Tischman, Epstein & Gross, Princeton, N.J., for defendants.

## OPINION

BROTMAN, District Judge:

The court has before it defendants' motion and plaintiff's cross-motion for summary judgment. Because there are material facts in dispute with regard to the breach of contract claims, summary judgment will be denied. Summary judgment will be granted on the fraudulent misrepresentation claim in favor of defendants. As to the claims asserted under the Employees Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, the court finds that plaintiff's cause of action is time-barred and, therefore, will grant summary judgment to defendant.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a former employee of JCI Data Processing, Inc. (JCI) who held the position of Vice President/Director of Marketing at the time of his resignation from the company in 1988. His amended complaint states that Victor Johnson, President and Chairman of the Board of JCI, made an offer of employment to plaintiff in late 1976 that included a promise he would receive a five percent ownership interest in the company. The agreement was not put in writing. Repeated attempts by Starr to establish the agreement in a signed writing were unsuccessful. In June 1984, plaintiff advised Johnson that he was quitting his employment, citing defendants' failure to increase his salary and to grant the promised ownership interest in writing. Starr claims that, in response, Johnson offered plaintiff a $20,000 raise, an expense account increase and a five percent ownership interest in the company if plaintiff would stay on at JCI. Plaintiff claims that Johnson told him that he would instruct his lawyer to draw up the papers for transfer of the ownership interest and plaintiff thereupon withdrew his resignation. The papers were never produced and the ownership interest never transferred.

In September 1976, JCI left its parent, Provident National Bank, and formed its own independent corporation with many of Provident's former employees. During the first year of operations, plaintiff learned that approximately 30 employees were covered under a company-sponsored pension plan that JCI created for those employees who left Provident. Plaintiff requested to be included in the plan, which request Johnson granted retroactively. The plan was formed by annually crediting each eligible employee with an amount equal to five percent of his or her base salary. Annual

statements were distributed to employees that showed the total amount accumulated and credited to each employee's account. Starting in 1986, the annual statement also noted that "this fund will continue to be accrued through your retirement as a JCI employee at age 65, at which time the total dollars accumulated will be paid to you." No other documents with regard to the plan were distributed to employees.

In April 1988, plaintiff again submitted his resignation, citing defendants' continued failure to convey the five percent ownership interest and to adequately compensate him. Plaintiff's employment terminated on June 30, 1988. On April 18, 1989, plaintiff's attorney inquired as to the status of his pension account, which had a balance of approximately $26,000, and what options were available in order to receive payment. Johnson never replied.

Based on the facts above, on July 5, 1989 plaintiff filed a complaint alleging the following counts: breach of contract for failure to convey the five percent ownership interest (Count I); promissory estoppel as to the ownership interest (Count II); fraud and misrepresentation as to the ownership interest (Count III); breach of contract to establish and maintain a pension plan (Count IV); promissory estoppel as to the pension plan (Count V); breach of fiduciary obligations in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A) and (B) (amended Count VII); failure to provide information in violation of ERISA, 29 U.S.C. § 1132 (Count VIII); failure to comply with applicable ERISA requirements in the establishment, operation, maintenance and funding of the pension plan (Count IX); and denial of plan benefits entitled as a matter of law (Count X).[1] As relief, plaintiff seeks compensatory and punitive damages, an injunction against any act which violates ERISA, other equitable and remedial relief to redress such violations, enforcement and clarification of plaintiff's rights and benefits under ERISA, relief pursuant to 29 U.S.C. § 1109 and costs and attorney's fees.

Defendant has moved the court for summary judgment on grounds that no contract to transfer an ownership interest was ever formed; the elements necessary to establish promissory estoppel are missing; the JCI retirement plan is exempt from ERISA; the statute of limitations bars plaintiff's claims for breach of fiduciary duty under ERISA; JCI did not breach its agreement to provide a retirement benefit to plaintiff; and the facts are inadequate to prove fraud and misrepresentation. Plaintiff's cross-motion seeks partial summary judgment on the ERISA claims.

## DISCUSSION

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987)

---

**1.** Plaintiff voluntarily withdrew Count VI of the complaint. Plaintiff's Brief in Opposition to

Defendant's Motion for Summary Judgment at 29, n. 16.

(Becker, J., concurring) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### A. Breach of Contract to Transfer Ownership

■ The parties have conducted depositions and discovery that reveal that disputed material facts exist with regard to the five percent ownership interest. For example, plaintiff claims that Johnson told him in June 1984 that "I had earned the ownership interest, it was now mine and that he would have his lawyers draw up the papers within the next few weeks." Based on that oral promise, Starr accepted the offer and withdrew his resignation. Starr Affidavit, Plaintiff's Exhibit 1 at ¶ 9. Johnson recalls referring the stock option issue to his lawyer to put something in writing, Transcript of Johnson Deposition at 51, but he also claims that he told Starr he would give him "some rights to ownership at some time," never specifying when. Transcript of Johnson Deposition at 47.

Given these conflicting recollections, it is up to the jury to decide whether there was a meeting of the minds supported by adequate consideration. Defendants' argument that the parties never agreed on all of the essential terms relating to transfer of the ownership interest and, therefore, no contract existed, is countered by Starr's recollection that the ownership interest would be transferred without condition or restriction, thus obviating the need to express the form of transfer. In addition, all prior discussions between the parties had been with respect to the transfer of stock.

Viewing all doubt in favor of the non-moving party, the court finds that material issues of fact are in dispute. Summary judgment on the breach of contract claim as to the five percent ownership issue will be denied.

### B. Promissory Estoppel

Defendant contends that plaintiff's factual scenario does not meet the legal requirements of promissory estoppel, *i.e.,* (1) a clear and definite promise by the promisor (2) with the expectation that the promisee will rely thereon, (3) the promisee does in fact reasonably rely on the promise and (4) promissee incurs a definite and substantial detriment in reliance on the promise. Restatement of Contracts (Second), § 90. At most, defendant's argument has raised disputed issues of material fact for the jury to decide. Plaintiff has shown sufficiently all the elements of promissory estoppel and defendant's disagreement with the factual assertions by plaintiff does not meet the summary judgment standard.

### C. ERISA

The Employee Retirement Income Security Act was established to protect workers and their families from losing anticipated retirement benefits due to the lack of vesting provisions in employee pension plans. The statute establishes minimum standards to assure "the equitable character of such plans and their financial soundness." 29 U.S.C. § 1001(a). In recognition of ERISA's remedial purposes, the courts have uniformly held that the statute is to be liberally construed. *See Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402 (2d Cir.1985); *Gilliam v. Edwards,* 492 F.Supp. 1255 (D.N.J.1980); Bruce, *Pension Claims: Rights and Obligations* at 7, n. 13 (1988).

■ 1. *Statutory Exemption:* Defendant does not dispute that the JCI retirement plan meets the statutory definition of a pension plan. *See* 29 U.S.C. § 1002(2)(A). Instead, it claims that the JCI plan is exempt from the funding, vesting and fiduciary obligation requirements of ERISA, cit-

ing 29 U.S.C. §§ 1051, 1081 and 1101. These provisions exempt from ERISA coverage "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."

There is no dispute that the JCI plan was unfunded. Defendant, however, must also prove that the primary purpose of maintaining the JCI retirement plan was to benefit a select group of management or highly compensated employees.

The court finds that the primary purpose of maintaining the JCI plan was not to defer compensation for a select group of its top employees. On the contrary, at the time the plan was created and throughout its existence, participation in the plan was never based on an employee's compensation level or managerial status. Instead, it was predicated on whether that employee had previously worked at Provident, JCI's former parent. Thus, participants remaining in the plan as of 1989 represented many levels of the company, from nonsupervisory clerical positions (38%) to line supervisor jobs (25%) to upper management (38%). Indeed, the only two participants of the plan who have retired and received benefits so far are both secretaries. Neither can plaintiff show that this group is limited to highly compensated employees. Salaries range from $12,000 to $336,000, with 60% of the group earning less than $31,000 in 1989. The court could not possibly stretch the guidelines suggested in *Belka v. Rowe Furniture Corporation*, 571 F.Supp. 1249 (D.Md.1983), to defendant's requested specifications.

■ 2. *Statute of Limitations:* Having established that the JCI plan is subject to ERISA and does not fall within any of its exemptions, the court must consider defendant's argument that plaintiff's claim is time-barred. The relevant limitations period for plaintiff's cause of action is found at 29 U.S.C. § 1113(a), which states in full:

No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Analysis of the limitations problem here turns on construction of the "actual knowledge of breach or violation" language of 29 U.S.C. § 1113(a)(2). The court's research has revealed no settled standard in this circuit or among the circuits generally for interpreting this phrase.

Defendant asserts that plaintiff, by his own admission, had actual knowledge that the plan was unfunded and not accruing interest sometime prior to 1980, that at that time plaintiff approached Johnson to complain that the employee's account should earn interest and that plaintiff did nothing more until he filed this lawsuit in July 1989. Transcript of Starr Deposition at 36–17.[2] Under this theory, the three-

---

**2.** Starr's deposition by defendants' counsel states, in part, the following:

Q. Did you ever tell Mr. Johnson I think these ought to be funded and I'm entitled to interest or some sort of valuation from September, '76, on?
A. Yes.
Q. When was that?
A. When I discovered it wasn't funded.
Q. When was that? ...
A. It was early on in the start up of the company when I became a participant in the plan.

Q. Is it before 1980?
A. I believe so.
Q. All right. What did you do about that?
A. I brought it up and I thought it should be funded, because it's not accruing interest.
Q. Okay. You brought it up to whom?
A. To Victor [Johnson].... I said I don't think it's fair that the retirement plan not be accruing interest on behalf of the participants in the plan....
Q. And Johnson said what?
A. He said it's not.

year limitations period applicable to plaintiff's cause of action ran sometime prior to 1983. In response, plaintiff argues that the gravamen of his complaint is that defendant engaged in a continuous course of improper action in violation of ERISA requirements, thereby falling within the continuing wrong theory illustrated in *Buccino v. Continental Assurance Co.*, 578 F.Supp. 1518 (S.D.N.Y.1983) (failure of fiduciaries to advise of unlawful and imprudent investments continuously harmed the plan each time a premium payment was made thus falling within six-year limitations period of § 1113(a)(1)(A)). Alternatively, plaintiff argues fraudulent concealment in that plaintiff continued to receive alleged account statements that led him to believe the plan complied with ERISA.

The Eleventh Circuit in *Brock v. Nellis*, 809 F.2d 753 (1987), found that "actual knowledge" is construed in accordance with its plain meaning: A plaintiff "must have had specific knowledge of the actual breach of duty upon which he sues." *Id.* at 755. Constructive knowledge, on the other hand, *i.e.*, knowledge the law deems obtained through the exercise of reasonable care, is not enough.[3]

In order to apply the actual knowledge test, the court must analyze and define the underlying violation upon which Starr's claim is founded. *Meagher v. IAM Pension Plan*, 856 F.2d 1418, 1422 (9th Cir. 1988). Starr asserts that the JCI retirement plan is, and has been since 1976, an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(3). As such, it is subject to ERISA's requirements of reporting and disclosure, minimum participation and vesting and minimum funding. The plan is also subject to ERISA's fiduciary responsibility requirements, including establishing a trust to hold plan assets and creating a written instrument to govern the plan. Starr alleges that defendants have failed to comply with any of these require-

ments and, as a result, defendants have deprived plan participants of benefits to which they are entitled. He seeks to recover benefits, enforce his rights and clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

ERISA requires that "[e]very employee pension benefit plan subject to this part shall satisfy the minimum funding standard...." 29 U.S.C. § 1082(a)(1). Employers must establish a "funding standard account," which "shall be ... credited ... with interest...." 29 U.S.C. § 1082(b)(5). Plaintiff's undisputed testimony is that he discovered that the plan was unfunded and not accruing interest sometime prior to 1980. Therefore, his cause of action under ERISA accrued upon such discovery and expired some time prior to 1983.

Furthermore, even assuming, *arguendo*, that the continuing wrong theory of *Buccino* applies, it is of no avail to plaintiff because the statute requires application of the *earlier* of either six years from the breach or three years from actual knowledge of the breach. 29 U.S.C. § 1113. Equally of no avail is plaintiff's attempt to allege fraudulent concealment since, plainly from his own testimony, plaintiff had actual knowledge of his cause of action since before 1980.

**■ 3.** *Request for Information:* Plaintiff also seeks damages for defendants' alleged failure to provide pension plan information upon plaintiff's letter request of April 18, 1989. It is within the court's discretion to award damages for an administrator's failure or refusal to comply with a request for plan information. 29 U.S.C. § 1132(c); *Wesley v. Monsanto Co.*, 554 F.Supp. 93 (D.C.Mo.1982), *aff'd*, 710 F.2d 490 (8th Cir.1983). An important factor in determining whether damages should be awarded is evidence that plaintiff's rights had been prejudiced by such failure. *Shlomchik v. Plan of Amalga-*

---

Q. Okay. What else did you do—
A. Nothing.

**3.** In 1987, Congress amended § 1113(a)(2) by deleting language that gave plaintiffs three years from the date "on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this subchapter." Hence, no language of constructive knowledge exists in this part of the statute.

*mated Ins. Fund,* 502 F.Supp. 240 (D.C.Pa. 1980), *aff'd,* 671 F.2d 496 (3rd Cir.1981).

Here, plaintiff is unable to show prejudice since, as discussed above, he was aware of his cause of action and able to enforce his rights some time before 1980. *See Bruch v. Firestone Tire and Rubber Co.,* 828 F.2d 134, 153 (3rd Cir.1987). The court declines to grant judgment in plaintiff's favor on this count.

### D. Breach of Contract to Provide Retirement Benefits

■ Plaintiff alleges that he had an oral contract with JCI and Johnson to participate in the pension plan that was established for employees leaving Provident for JCI. Defendant does not dispute the agreement but claims that the terms of the plan provided benefits at age 65 at "retirement as a JCI employee." Since plaintiff left the company before age 65, there was no breach of the agreement.

The court finds that there are disputed issues of material fact and denies defendant's motion for summary judgment on this issue. Eligibility to receive benefits under the plan did not become clear until 1986, when JCI inserted new language in the annual account statements specifying the plan's terms. Before 1986, the terms of the plan were unclear except that employees who came from Provident apparently were promised the same retirement plan they had at Provident. Plaintiff also has submitted evidence that at least one other JCI employee objected to the new language in the account statements, further indication that the terms of the plan were unclear. Plaintiff's Exhibit M–1. On these facts, the court is unable to reach a conclusion as to the terms of the plan and plaintiff's potential right to benefits. Therefore, summary judgment will be denied as to the breach of contract and the promissory estoppel claims for pension benefits.

### E. Fraud and Misrepresentation

■ Plaintiff alleges in Count III that Johnson committed fraudulent misrepresentation by granting Starr a five percent ownership interest when he had no existing intention to transfer such interest.

To prove fraud, plaintiff must show a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity with the intention that the other party rely on it to its detriment. *Dover Shopping Center, Inc. v. Cushman's Sons, Inc.,* 63 N.J.Super. 384, 164 A.2d 785 (App.Div.1960). An exception to the rule that the alleged misrepresentation must relate to some past or presently existing fact exists in the case of a false representation of an existing intention, *i.e.,* a "false state of mind." *Ocean Cape Hotel Corp. v. Masefield Corp.,* 63 N.J.Super. 369, 380, 164 A.2d 607 (App.Div.1960). "Misrepresentation of a present state of mind, with respect to a future matter, may be concluded from … circumstances indicating that the promisor must have known at the time of his promise that he could not or would not fulfill it." *Id.* at 381, 164 A.2d 607, *citing Samatula v. Piechota,* 142 N.J.Eq. 320, 323, 60 A.2d 86 (Ch.1948).

Johnson testified at his deposition that he started to discuss the transfer of an ownership interest to Starr with his attorney in "the late 80's" and obtained a preliminary draft, which he showed to no one. Transcript of Johnson Deposition at 51–53. Defendants have been unable to produce a copy of that preliminary draft and, from that fact, plaintiff infers that Johnson did not make any such request to his lawyer, thereby making a deliberate misrepresentation of his then existing intention to put the ownership interest in writing.

The court can not join in drawing such a hopeful inference, even when viewed in a light most favorable to the plaintiff. To do so would require the court to find, on the basis of a missing document, that Johnson perjured himself. The false state of mind standard puts the burden of proof on plaintiff to show from the circumstances that Johnson must have known at the time of his promise that he would not fulfill it. Evidence of a missing document is not significantly probative of such an inference. Summary judgment will be granted in favor of defendant on Count III.

### F. Pendent Jurisdiction

Having resolved in favor of defendants' motion for summary judgment on the federal ERISA claims, the court notes that it now has before it only state law claims. The court is free to exercise its discretion when deciding whether to retain jurisdiction over pendent state claims after it has dismissed all federal claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–29, 86 S.Ct. 1130, 1139–41, 16 L.Ed.2d 218 (1966). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139.

Plaintiff is in federal court solely on federal question jurisdiction, *see* 28 U.S.C. § 1331, and otherwise does not meet the diversity of citizenship requirements of 28 U.S.C. § 1332. The remaining counts ready for trial all involve state law claims. In the interest of comity and to promote justice, this court will dismiss the case without prejudice for lack of jurisdiction.

### G. Conclusion

For the foregoing reasons, the court finds that genuine issues of material facts are in dispute regarding plaintiff's breach of contract and promissory estoppel claims. Summary judgment will be denied as to those counts. Plaintiff's ERISA claims are time-barred under the relevant statute of limitations and will be dismissed with prejudice. Plaintiff's allegations of fraud and misrepresentation also will be dismissed with prejudice for failure to state sufficient facts to prove the allegation.

An appropriate order will be entered.

### ORDER

This matter having come before the court on defendants' motion and plaintiff's cross-motion for summary judgment; and

The court having considered all the submissions of the parties; and

For the reasons set forth in the opinion accompanying this order; and

For good cause shown;

IT IS this 4th day of February 1991 hereby

ORDERED that defendants' motion for summary judgment on Counts I, II, IV and V of plaintiff's amended complaint is DENIED WITH PREJUDICE; defendants' motion for summary judgment on Counts III, VII, VIII, IX and X of plaintiff's amended complaint is GRANTED WITH PREJUDICE; and plaintiff's motion for summary judgment on counts VII, VIII, IX and X of his amended complaint is DENIED WITH PREJUDICE.

FURTHER ORDERED that plaintiff's remaining claims are DISMISSED WITHOUT PREJUDICE for lack of federal jurisdiction.