**Joseph M. STARR, Plaintiff,**

v.

**JCI DATA PROCESSING, INC. and Victor L. Johnson, Defendants.**

Civ. No. 89–2970 (SSB).

United States District Court, D. New Jersey.

July 18, 1991.

Louis Rosner, Philadelphia, Pa., for plaintiff.

William S. Greenberg, Karen L. Jordan, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Princeton, N.J., for defendants.

OPINION

BROTMAN, District Judge:

Plaintiff has requested the court to reconsider its February 4, 1991 decision dismissing, *inter alia,* his claims pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq. Starr v. JCI Data Processing, Inc.,* 757 F.Supp. 390 (D.N.J.1991). Plaintiff takes issue with the court's all-or-nothing treatment of the timeliness of his ERISA claims as rising or falling entirely with plaintiff's actual knowledge in 1980 that the company's pension plan was unfunded and not accruing interest. Upon reconsideration, this court finds that plaintiff's complaint indeed asserts separately accruing causes of action under ERISA, each of which must be analyzed independently from defendant's alleged violation of ERISA's funding requirements. Therefore, the court will reinstate plaintiff's complaint on the docket, grant summary judgment to plaintiff on liability and and await further briefing and a proof hearing to determine damages.

A. *Motion for Reconsideration Standard*

District Court of New Jersey Rule 12I provides that a motion for reconsideration shall be served with "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." A party seeking reconsideration must show more than a disagreement with the court's decision, and "recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Carteret Savings Bank, F.A. v. Shushan,* 721 F.Supp. 705, 709 (D.N.J.1989). *See also Egloff v. New Jersey Air National Guard,* 684 F.Supp. 1275, 1279 (D.N.J.1988). The only proper ground for granting a motion for reconsideration, therefore, is that the matters or decisions overlooked, if considered by the court, "might reasonably have altered the result reached...." *New York Guardian Mortgage Corp. v. Cleland,* 473 F.Supp. 409, 420 (S.D.N.Y.1979);

*U.S. v. International Business Machines Corp.*, 79 F.R.D. 412, 414 (S.D.N.Y.1978).

Plaintiff's motion presents an important argument, not highlighted in his initial briefs, as to the separate and independent causes of action he alleges under ERISA and whether they were appropriately time-barred. The court, therefore, will proceed to reconsider its analysis of the limitations period applicable to each ERISA claim. As to plaintiff's argument that Count III, alleging fraud and misrepresentation, should not be dismissed, the court finds no new matter or argument raised and therefore will not reconsider that conclusion.

## B. *Plaintiff's ERISA Claims*

Plaintiff's amended complaint contains four separate causes of action pursuant to ERISA. Count VII alleges the requisite elements establishing that the JCI retirement plan is an employee benefit plan subject to ERISA. Paragraphs 41 and 42 describe defendants JCI and Johnson as employers, sponsors, parties in interest, administrators and fiduciaries within the meaning of ERISA. Paragraph 43 then alleges that defendants breached their fiduciary obligations as imposed by 29 U.S.C. § 1104(a)(1)(A) and (B) by failing to comply with ERISA's requirements of reporting and disclosure, minimum participation and vesting, minimum funding, and fiduciary responsibilities of establishing a trust to hold plan assets and creating a written instrument.[1]

Count VIII alleges that on or about April 18, 1989 plaintiff requested defendants to provide copies of documents about the plan pursuant to 29 U.S.C. §§ 1021–1025. The letter inquired as to the status of plaintiff's pension account and to advise "as to any available options that Mr. Starr may have with respect to the payment of the funds. Please also forward copies of any available literature and/or reports with respect to the pension plan and its administration." Plaintiff's Exhibit 9. Defendants never responded to this request and thus plaintiff seeks to enforce his rights under 29 U.S.C. § 1132(a)(1)(A) and (c).[2]

Count IX[3] avers a generalized allegation that, "[b]y virtue of the conduct described herein," defendants have failed to comply with applicable ERISA requirements "in the establishment, operation, maintenance and funding of the pension plan." Amended Complaint at ¶ 49. The court interprets this allegation as a claim "to enjoin any act or practice which violates any provision of this subchapter, or ... to obtain other equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter" as authorized by 29 U.S.C. § 1132(a)(3).

Finally, Count X states that plaintiff, as a participant in the plan, has been denied benefits to which he is entitled. He seeks to clarify his rights and to establish and obtain the present and future benefits to which he is entitled under the plan, as authorized by 29 U.S.C. § 1132(a)(1)(B).

## C. *Statute of Limitations*

The court must now consider the applicable statute of limitations to each of plaintiff's aforementioned claims under ERISA.

### 1. Breach of Fiduciary Duty—29 U.S.C. § 1113:

█ Congress set forth only one limitations period when it enacted ERISA, found at 29 U.S.C. § 1113. That section states:

---

**1.** Section 1104(a) states in relevant part:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use

in the conduct of an enterprise of a like character and with like aims.

**2.** Section 1132(c) empowers the court in its discretion to make a plan administrator personally liable up to $100 a day for his failure or refusal to comply with a request for any information he is required to provide by the subchapter.

**3.** Both Counts IX and X were added after plaintiff requested leave to amend his complaint in order to clarify the bases upon which he is entitled to relief. *See* Order of Nov. 29, 1990.

No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation....

By the plain words of the section, this limitations period applies only to actions brought under Part 4—Fiduciary Responsibility. Other courts have interpreted § 1113 the same way. *See, e.g., Wise v. Dallas & Mavis Forwarding Co.,* 753 F.Supp. 601, 606 (W.D.N.C.1991); *Hollingshead v. Burford Equipment Co.,* 747 F.Supp. 1421, 1431 (M.D.Ala.1990). Thus, as to plaintiff's claims of breach of fiduciary duty, § 1113 applies.

■ In its previous opinion, this court found that plaintiff had actual knowledge that the JCI plan was unfunded and not accruing interest sometime prior to 1980. The court then went on to conclude on the basis of that discovery that *all* of plaintiff's ERISA claims were time-barred. 757 F.Supp. at 395. The implicit—and erroneous—assumption was that, since plaintiff knew the plan was not funded nor accruing interest, he must have known of his remaining ERISA claims. A fair reading of the civil enforcement section of the statute, as well as the uniform interpretation among courts that the Act be liberally construed to effectuate its broad remedial purposes, *see, e.g.,* cases cited at *Starr,* 757 F.Supp. at 393; *Barrowclough v. Kidder, Peabody & Co., Inc.,* 752 F.2d 923, 932 (3d Cir.1985), strongly suggests that such a conclusion unduly narrows an employee's remedies under the Act.

Defendants attempt to preserve their windfall by arguing that plaintiff knew before 1980 of all the facts necessary to bring a claim for failure to comply with the vesting, funding, participation and fiduciary responsibility requirements of the Act. Defendants' Brief in Opposition to Reconsideration at 4. However, the evidence indicating plaintiff's knowledge of an ERISA cause of action is solely limited to his discovery sometime before 1980 that the plan was unfunded and not accruing interest. *See* 757 F.Supp. at 394 n. 2.

Certainly, plaintiff is time-barred from asserting his claim that defendants breached their fiduciary duties by failing to comply with the minimum funding requirements of Part III of Subchapter I of the statute (titled "Funding"). This would include any claim under that part requiring the crediting of interest to the standard funding account. *See* 29 U.S.C. § 1082(b)(5).[4] However, plaintiff's complaint alleges much more than a single breach of fiduciary duty under ERISA. He contends that defendants' complete failure to comply with any of ERISA's other requirements resulted in successive breaches of fiduciary duty. The court must examine these alleged fiduciary violations to determine whether they are time-barred by § 1113.

■ In the absence of actual knowledge, § 1113 mandates application of a limitations period of six years after the date of the last action constituting part of the breach or, in the case of omission, the latest date on which the fiduciary could have cured the breach or violation. (For applications *see, e.g., Davidson v. Cook,* 567 F.Supp. 225, 234 (E.D.Va.1983), *aff'd,* 734 F.2d 10 (4th Cir.1984), *cert. denied, Accardi v. Davidson,* 469 U.S. 899, 105 S.Ct. 275, 83 L.Ed.2d 211 (1984) (last action was last disbursement of funds pursuant to loans made not in interest of plan beneficiaries); *Buccino v. Continental Assur. Co.,* 578 F.Supp. 1518, 1521 (S.D.N.Y.1983) (last action was last time fund was injured

---

4. For the reasons set forth in this court's previous opinion, plaintiff cannot seek refuge in a continuing wrong theory when he had actual knowledge of such a breach and the statute requires application of the earlier of the three-year or six-year period. 757 F.Supp. at 395.

by making premium payment due to fiduciaries' failure to advise fund to divest itself of unlawful or imprudent investments).) This language is unusually broad in allowing employees to pursue their claims in a timely fashion while hampering an employer's effort to hide behind a time bar. Thus, the language comports with Congress' intent in ERISA " 'to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective ... recovery of benefits due to participants.' " S.REP. NO. 127, 93d Cong., 1st Sess. 35 (1973), quoted in *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336 (D.C.Cir.1991) (WESTLAW, ALLFEDS library) (applying more liberal discovery rule to determine accrual of certain ERISA claims).

■ Under the exceptional facts of this case, in which defendants are charged with completely ignoring all the relevant statutory requirements, it seems appropriate to characterize these allegations *in toto* as concerning JCI's failure to act in compliance with the statute each time it made annual contributions to the plan. In other words, each year that JCI maintained its pension plan without complying with the various aforementioned provisions of the Act, it breached its fiduciary duty to maintain the plan solely in the interest of plan participants and beneficiaries.[5] The last action constituting part of that breach, therefore, would be the last time contributions were credited to plaintiff's pension account—in December 1987. Plaintiff filed his complaint on July 5, 1989, well within the six-year limitations period. However, plaintiff asserts multiple and successive violations of the statute occurring over a thirteen-year period, some of which fall outside the limitations period. Therefore, in sum, the court finds that plaintiff is entitled to assert all of his fiduciary-related ERISA claims (except the failure to fund claim of which plaintiff had actual knowledge before 1980) which occurred in each of the six years preceding the filing of his complaint—from July 5, 1983 to July 5, 1989. *See Buccino*, 578 F.Supp. at 1522–23 (all claims accruing within six-year period previous to filing complaint are timely).

**2. Plaintiff's Remaining ERISA Claims:**

■ Counts VIII, IX and X do not assert fiduciary-related breaches and therefore § 1113's period of limitations does not apply. In order to determine the appropriate limitations period, we must look to the most analogous state statute of limitations. *Agency Holding Corp. v. Malley–Duff Assocs., Inc.*, 483 U.S. 143, 146–47, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987); *Connors v. Hallmark, supra; Abbott v. Drs. Ridgik, Steinberg & Assoc., P.A.*, 609 F.Supp. 1216, 1218 (D.N.J.1985). The court finds that New Jersey's six-year statute of limitations for breach of contract suits, N.J. S.A. 2:14–1, is the most closely analogous provision for plaintiff's non-fiduciary-related claims. *Accord Northern California Retail Clerks Unions v. Jumbo Markets*, 906 F.2d 1371, 1372 (9th Cir.1990) (ERISA action to recover unpaid contributions); *Miles v. New York State Teamsters Conference, etc.*, 698 F.2d 593 (2d Cir.1983), *cert. denied* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983) (ERISA action to determine eligibility for pension benefits); *Abbott, supra* (ERISA action to recover damages for denial of requested information).

■ The court must next determine when plaintiff's claims accrued. Even though a state statute of limitation applies, the time at which a federal claim accrues is a matter of federal law. *Connors v. Hallmark, supra; Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir.1988). The general rule of accrual of a federal claim is when a plaintiff becomes aware or reasonably should become aware of the facts underlying the claim. *Connors v. Hallmark,*

---

**5.** Examples of the statute's requirement to act on an annual basis can be found at 29 U.S.C. § 1023 (an annual report shall be published with respect to every employee benefit plan to which this part applies); 29 U.S.C. § 1052 (employee becomes eligible to participate in pension plan after completing one year of service); 29 U.S.C. § 1053 (nonforfeitable percentages of pension account vested to employee rise on an annual basis); 29 U.S.C. § 1082(a) (minimum funding requirements are satisfied if at end of each plan year there is no accumulated funding deficiency).

*supra* (noting that at least eight federal courts of appeals have so held) (citations omitted); *Connors v. Beth Energy Mines, Inc.,* 920 F.2d 205, 212 (3d Cir.1990) (applying the general rule and holding that trustees should have become aware, in the exercise of reasonable diligence, of their ERISA claim); *Keystone,* 863 F.2d at 1129.

The evidence before the court indicates that plaintiff's counsel wrote a letter on April 18, 1989, several months after he resigned, inquiring as to the status of his pension account, general information with respect to the plan and what options plaintiff had with respect to the payment of funds. Plaintiff's Exhibit 9. Starr's June 3, 1990 affidavit states that "I have not received a response to my inquiry." Defendant Johnson's testimony is that "I didn't feel it had any validity and chose not to spend time on it." Transcript of Johnson Deposition at 80. Plaintiff then filed this lawsuit on July 5, 1990.

Based on this series of events, the court concludes that plaintiff only became aware of his claim for denial of benefits and information request after his counsel sent the letter to Johnson and Johnson failed to respond within the statutorily mandated 30 days.[6] At this point, it became clear that Starr's request was denied. Likewise, Starr's discovery of the remaining violations of ERISA—that the JCI plan did not comply with ERISA's minimum participation and vesting requirements as well as its requirement of a written instrument and establishment of a trust—was intrinsically tied to Johnson's failure to provide information about the plan. Until that time, the only information plaintiff received was a short annual statement from Johnson of the amount accrued in the retirement fund and that the total amount accrued would not be paid until "your retirement as a JCI employee at age 65...." Plaintiff's Exhibit 7. Therefore, these claims easily fall within the six-year statute of limitations.

*See Miles,* 698 F.2d at 598–99 (accrual occurs when fiduciary clearly repudiates employee's claim).

## D. Summary Judgment on Plaintiff's ERISA Claims

### 1. Liability:

Having now found that most of plaintiff's ERISA claims are *not* time-barred, the court will consider for the first time plaintiff's motion for summary judgment. Plaintiff has requested the court to find as a matter of law that defendants have failed to comply with the provisions of the Act and have further violated their fiduciary obligations. Plaintiff also seeks judgment as a matter of law that defendants have violated their statutory obligation to respond to plaintiff's request for information.

Significantly, defendants do not dispute that the JCI retirement plan meets the statutory definition of an eligible pension plan. *See* 29 U.S.C. § 1002(2)(A). More importantly, however, defendants have completely failed to oppose plaintiff's claim of liability. Instead, they have rested their defense on three arguments: 1) the plan is exempt from ERISA because it is designed primarily to benefit a select group of management or highly compensated employees, 2) the ERISA claims are time-barred, and 3) as to plaintiff's § 1132(c) claim, plaintiff has failed to show any prejudice he suffered as a result of not receiving a response to his information request.[7] The court found in its previous opinion that the JCI plan was not statutorily exempt from ERISA and it will not disturb that finding here. *Starr,* 757 F.Supp. at 393–94. Furthermore, the court now finds that plaintiff's ERISA claims are not time-barred, but for his claim that the JCI plan violated the statute's minimum funding requirements. Thirdly, the court previously denied summary judgment on plaintiff's § 1132(c) claim on grounds that plaintiff's

---

**6.** Section 1132(c) states that an administrator may be penalized for failing to respond to an information request "within 30 days after such request...."

**7.** Defendant's catch-all defense—that no violation of ERISA could be found where no separate fund existed and therefore it could not comply with the statute—can be dismissed out of hand. Such an interpretation would render the Act nugatory.

actual knowledge of his ERISA cause of action precluded him from showing any prejudice. *Id.* at 396. That finding, of course, will now have to be reconsidered in light of today's conclusion that most of plaintiff's ERISA's claims are not time-barred.

■ The court's review of the evidence in this case leads it to conclude that defendants violated several provisions of ERISA. Defendant Johnson admitted as much when he testified in his deposition that: 1) there was no written instrument pursuant to which the plan was administered, Transcript of Johnson Deposition at 22, in violation of § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument"); 2) no funds were set aside to meet obligations under the plan, Transcript at 35, in violation of § 1103(a) ("all assets of an employee benefit plan shall be held in trust by one or more trustees"); 3) in order to obtain one's accrued retirement benefits, a participating JCI employee must be at least age 65 and still employed by the company upon retirement at that age, Transcript at 30–34,[8] in violation of § 1053(a) (setting forth minimum vesting requirements before retirement age during which time certain specified percentages of one's benefits become nonforfeitable); and 4) only employees who left Provident to join JCI were entitled to participate in the plan, with the exception of Starr, who was retroactively enrolled at his request, Transcript at 21, 25, in violation of § 1052(a)(1)(A) (pension plans must permit participation of all employees over the age of 21 and after the completion of one year of service).

Defendant Johnson further testified that he took no steps to comply with the provisions of ERISA in his establishment and maintenance of the JCI retirement plan, despite his familiarity with the statute. Transcript at 23, 30. Apparently, Johnson did know enough to seek an opinion about whether the JCI plan was subject to the statute, but he sought this advice from a certified public accountant, who never issued a written opinion and, according to Johnson, only advised him that the plan would not qualify under Internal Revenue Service rules and regulations for certain tax purposes. Transcript at 29, 92.

Faced with this kind of scenario in which no material facts are in dispute and defendant virtually concedes liability, the court can proceed to grant summary judgment without a trial on the issue of liability. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Therefore, the court finds that defendant Johnson's lack of due care in ensuring that the JCI plan was in compliance with the law was a breach of his fiduciary duties pursuant to § 1104. Furthermore, § 1103(c)(2)(A) strictly forbids any assets of the plan to "inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." Clearly, the terms of the JCI plan allowing the company to retain accrued benefits if an employee does not retire from the company at age 65 violate this provision. Having found such a clear and fundamental violation of defendant's fiduciary responsibilities based on defendant's total failure to comply with the statute, the court believes it is unnecessary to catalogue each and every violation of defendant's fiduciary responsibilities. Likewise, it is clear from the court's analysis that defendant has violated those substantive provisions of the statute requiring minimum vesting and participation, establishment of a trust and the creation of a written instrument.

■ The only remaining question on liability involves defendant's obligation under ERISA's reporting and disclosure requirements. Defendant does not dispute that he never responded to plaintiff's April 1989 request for benefit information, literature

---

8. Johnson testified:

Q: If the person left before age 65 would they be entitled to anything?
A. No.

Q. And, that is irrespective of the number of years of service with the company?
A. Yes.
Transcript at 34.

and payment options. Rather, he seeks to excuse that failure by claiming that 1) Starr already knew the amount accrued as of March 21, 1988, 2) there was no literature associated with the plan other than the annual statements, and 3) Johnson reasonably believed that the plan was not subject to ERISA.

These excuses are easily dismissed. The statute is clear that an administrator of an employee pension benefit plan *shall* furnish a statement, on the basis of the latest available information, indicating "the total benefits accrued, and ... the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable." 29 U.S.C. § 1025(a). In *Barrowclough*, the Third Circuit stated:

> If a participant or beneficiary who has a pressing need for an accounting at a significant time, *such as upon termination of employment,* disability, or vesting, is unable to receive it upon a request, his or her financial planning would be impaired and his or her effort to enforce the rights and fiduciary obligations imposed by ERISA would be severely hampered.... The legislative history shows that the drafters of ERISA believed that individualized reporting and disclosure would play an important role in effectuating ERISA's goals. [Citations omitted.] The accounting provision, which is broadly applicable, must be construed so as to protect the employees' interests.

752 F.2d at 933–34 (emphasis added). Although at least one court in this circuit has held that a plaintiff must show some type of prejudice to receive damages awardable under § 1132(c), *Shlomchik v. Retirement Plan of Amalgamated Ins.*, 502 F.Supp. 240, 245 (E.D.Pa.1980), *aff'd*, 671 F.2d 496 (3d Cir.1981), the Third Circuit more recently in *Barrowclough* and in *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134, 153 (3d Cir.1987), *aff'd in part, rev'd in part,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), have emphasized the importance of responding to information requests "to enable claimants to make their own decisions on how best to enforce their rights." *Bruch*, 828 F.2d at 153.[9]

In its previous opinion, the court concluded that plaintiff could not show prejudice because he had actual knowledge the plan was unfunded. In light of its reconsideration of the separate causes of action pressed by plaintiff, this court must retract that conclusion. Plaintiff had recently resigned from the company and forwarded his information request to his former employer so that he could evaluate his options with regard to payment of his benefits. This was a significant time in which to receive such information so that he could know how to proceed to obtain his benefits. To say, as defendants do, that plaintiff already knew he was not entitled to benefits under the terms of the JCI plan does not excuse defendant from complying with the law. Furthermore, the fact that plaintiff knew his accounting as of March 1988 is not sufficient to inform him "on the basis of the latest available information" what his benefits were at the time he resigned three months later.

Finally, the court notes that it does not have before it the situation in *Bruch* in which the Third Circuit provided some guidance to lower courts' exercise of its discretion on this matter. There, the court stated that if the employee's claim "is not colorable, and if the employer displayed no bad faith in responding to the claim—taking somewhat too long to respond to it, for instance, but not ignoring it entirely—then the district court would be well within its discretion in setting damages at $0." *Id.*[10]

9. The Supreme Court in *Bruch* reversed the appellate court's decision to allow all claimants, whether or not they are "participants" as that term is defined in the statute, to receive information about benefit plans. 489 U.S. at 117, 109 S.Ct. at 957–58. It did, however, acknowledge that Congress' purpose in enacting ERISA's disclosure provisions was to ensure "that 'the individual participant knows exactly where he stands with respect to the plan'" (citation omitted). *Id.* at 118, 109 S.Ct. at 958.

10. The Supreme Court corrected the Third Circuit's definition of who is entitled to request information from an employer about a benefits plan by referring the appellate court to the statutory definition of "participant." Section 1002(7) defines participant as any "former em-

**642**

Here, in contrast, plaintiff's claim is more than colorable that he "will prevail in a suit for benefits," *Bruch*, 489 U.S. at 117, 109 S.Ct. at 958; it succeeds on all fours. In addition, defendant Johnson did display a lack of good faith in entirely ignoring plaintiff's request. The Supreme Court's and Third Circuit's guidance, therefore, leads the court to conclude that this is an appropriate occasion to exercise its discretion and award damages to plaintiff for defendant's failure to respond to his request for information.

### E. *Damages under ERISA*

The parties' briefs are void of any discussion of the amount of damages and the specific injunctive relief awardable under ERISA for the violations found under the statute. The court will not proceed to consider the question without some input from the parties. Therefore, counsel are directed to submit briefs on 1) the scope of injunctive relief the court can award when plaintiff is no longer employed at defendant's company yet seeks to force it to comply with the statute for the benefit of its current employees, who are not parties to this suit; 2) the available remedies, if any, pursuant to 29 U.S.C. § 1109; 3) the proper amount in plaintiff's accrued pension account that the court can award in light of its finding that plaintiff cannot sue on defendant's failure to credit interest to the plan; and 4) the proper amount, in the exercise of its discretion, the court should award in damages for defendant's violation of ERISA's reporting and disclosure requirements, up to $100 a day from the date of such violation.

Briefs must be submitted no later than August 12 and a proof hearing will be scheduled at the time of trial on plaintiff's remaining state law claims.

CONCLUSION

The court has proceeded to reconsider its earlier decision dismissing all of plaintiff's ERISA as time-barred. For the reasons set forth herein, the court finds that all but

ployee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." This definition would include

plaintiff's claim that the JCI plan was unfunded were timely filed. Furthermore, the court concludes, based on the overwhelming evidence before it, that defendants JCI and Johnson committed breaches of fiduciary duty, violated the substantive requirements of the statute and failed to respond to plaintiff's request for information. Accordingly, this court's February 4, 1991 decision in *Starr v. JCI Data Processing, Inc.*, 757 F.Supp. 390, is vacated to the extent it dismissed those ERISA claims that were timely filed and found no violation of § 1132(c).

former employees, like Starr, who have a colorable claim to vested benefits. *Bruch*, 489 U.S. at 117, 109 S.Ct. at 957–58.